NO. 24-1842

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SANDRA HERNDEN,

*Plaintiff-Appellant*,

v

CHIPPEWA VALLEY SCHOOLS, FRANK BEDNARD, and ELIZABETH
PYDEN

*Defendants-Appellees*,

**On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division**

---

**DEFENDANTS-APPELLEES' PRINCIPAL AND RESPONSE BRIEF**

**Oral Argument Requested**

---

Submitted by:
TIMOTHY J. MULLINS (P28021)
KENNETH B. CHAPIE (P66148)
JOHN L. MILLER (P71913)
LINDSAY P. HAZEN (P85861)
GIARMARCO, MULLINS & HORTON, P.C.
Attorneys for Defendants-Appellees
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
kchapie@gmhlaw.com
jmiller@gmhlaw.com
lhazen@gmhlaw.com

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1, Defendants-Appellees make the following disclosures:

1.   Are said parties a subsidiary or affiliate of a publicly owned corporation?

     **NO.**

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

     **NO.**

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS ........................................... ii

INDEX OF AUTHORITIES ................................................................. v

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................. xi

STATEMENT OF JURISDICTION ................................................... xii

INTRODUCTION ............................................................................ 1

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF FACTS ................................................................. 5

STANDARD OF REVIEW ............................................................... 14

SUMMARY OF ARGUMENTS ......................................................... 15

LEGAL ARGUMENT ...................................................................... 17

   I.      BEDNARD AND PYDEN ARE ENTITLED TO QUALIFIED IMMUNITY. ......................................................................... 17

     A.   Plaintiff-Appellant Cannot Establish A First Amendment Violation. 18

      i.   No Adverse Action Bars Plaintiff's Claim. ......................................... 19

        1.   Pyden's Email Was Not A Credible Threat To Plaintiff's Employment. .......................................................................... 21

        2.   Bednard's Email Did Not Give Rise To A Criminal Investigation. 24

        3.   The Claim of Adverse Action is further Diminished When Such Result Would Impair the First Amendment Rights of Defendants. ........ 28

      ii.   No State Action Bars Plaintiff's Claim. ............................................ 33

      iii.   No Casual Connection Bars Plaintiff's Claim. .................................. 37

     B.   Plaintiff-Appellant Cannot Establish That The Individual Defendants Violated Her Clearly Established Rights. ........................................... 39

   II.      THE DISTRICT CANNOT BE HELD LIABLE UNDER *MONELL*...42

     A.   If No Underlying Constitutional Violation, No *Monell* Liability. ...... 44

     B.   Plaintiff Cannot Meet The *Monell* Elements. .................................... 45

CONCLUSION ............................................................................... 47

CERTIFICATE OF COMPLIANCE .................................................... 48

CERTIFICATE OF ELECTRONIC SERVICE ...................................................48

RELEVANT DISTRICT COURT DOCUMENTS ............................................49

## INDEX OF AUTHORITIES

### <u>Cases</u>

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ....................................15

*Arrington-Bey v. City of Bedford Heights, Ohio*,
858 F.3d 988 (6th Cir. 2017) ................................................................44

*Balt. Sun. Co. v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006) ..................................2,28

*Bartley v. Taylor*, 25 F. Supp. 3d. 521 (M.D. Pa. 2014)..................................2,28

*Beck v. Hamblen Cty. Tennessee*, 969 F.3d 592 (6th Cir. 2020) ........................40

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................15

*Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998).........................28

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) ............................................17

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890 (6th Cir. 2004) .........................43

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ....................................................21

*Braswell v. Corr. Corp. of Am.*, 419 Fed. Appx. 622 (6th Cir. 2011) ................46

*Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002) ...............................................26

*Carlson v. North Dearborn Heights Bd. of Education*,
157 Mich. App. 653 (Mich. Ct. App. 1987) ........................................................44

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................15

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ...........................................44

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021).................................40

*Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999)..............................................31

*Connick v. Thompson*, 563 U.S. 51 (2011) ........................................................46

*Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004)...................................................35

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ...........................................18

*Dixon v. Burke Cnty.*, 303 F.3d 1271 (11th Cir. 2002) ......................................29

*Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495 (6th Cir. 1996)............................46

*Farinacci v. City of Garfield Hts.*, 2010 WL 1268068 (N.D. OH. 2010) ..........44

*Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308
(6th Cir. 2010)......................................................................................................14

*Frazier v. USF Holland, Inc.*, 250 Fed. Appx. 142 (6th Cir. 2007) ...................38

*Fritz v. Charter Township of Comstock*,
592 F.3d 718 (6th Cir. 2010) ........................................................ 1,6,20,21,22,42

*Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041 (9th Cir. 1994)...............32

*Goldstein v. Galvin*, 719 F.3d 16 (1st Cir. 2013) ...............................................29

*Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778
(6th Cir. 1983).................................................................................. 1,16,21,22,25

*Graves v. Mahoning Cty.*, 821 F.3d 772 (6th Cir. 2016)....................................45

*Guiterrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987) ............................................19

*Haggart v. City of Detroit*, No. 2:19-cv-13394, 2021 WL 5040293
(E.D. Mich. Oct. 27, 2021) ........................................................................ 1,16,21

*Hammerhead Enterprises v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983)..................30

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012) ..............21

*Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005)..........................................19

*Harmon v. Beaumont Indep. Sch. Dist.*, No. 1-12-CV-571,
2014 WL 11498077 (E.D. Tex. Apr. 7, 2014).......................................................31

*Harrington v. Harris*, 118 F.3d 359 (5th Cir. 1997)............................................28

*Hartman v. Moore*, 547 U.S. 250 (2006)............................................................18

*Herman v. Hosterman*, , No. 1:11-CV-898, 2011 WL 4974184
(M.D. Pa. Oct. 19, 2011).......................................................................................31

*Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012) ............................45

*Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) .....................................................19

*Hutchins v. Clarke*, 661 F.3d 947 (7th Cir. 2011) ..............................................28

*IAMAW v. Haley*, 482 Fed. Appx. 759 (4th Cir. 2012) ......................................29

*J.H. v. Williamson Cnty.*, Tenn., 951 F.3d 709 (6th Cir. 2020)..........................44

*Josephson v. Ganzel*, 115 F.4th 771 (6th Cir. 2024) ..........................................18

*Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019 (6th Cir. 2024) ......27

*Kirby v. City of Elizabeth City*, 388 F.3d 440 (4th Cir. 2004)............................28

*Kollaritsch v. Michigan State Univ.*, 944 F.3d 613 (6th Cir. 2019) ...................40

*Laird v. Tatum*, 408 U.S. 1 (1972)........................................................ 24,25,27,42

*Lakkis v. Lahovski*, 994 F. Supp. 2d 624 (M.D. Pa. 2014) ..................................31

*Lee v. Cleveland Clinic Foundation*, 676 Fed. Appx. 488 (6th Cir. 2017) .........23

*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007)............................................38

*Lindke v. Freed*, 601 U.S. 187 (2024) .................................................................35

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ............................................15

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)....................................................20

*Mackey v. Rising*, 106 F.4th 552 (6th Cir. 2024)........................ 2,16,33,35,36,37

*Malley v. Briggs*, 475 U.S. 335 (1986) ...............................................................17

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)............................................ 20,24

*Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978)...... 41,45

*Moore v. Shelby Cnty., Kentucky*, 369 F. Supp. 3d 802 (E.D. Ky 2019) ............33

*Morrison v. Bd. of Educ. of Boyd City*, 521 F.3d 602 (6th Cir. 2008) ...............27

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .......18

*Mulligan v. Nichols,* 835 F.3d 983 (9th Cir. 2016)...............................................32

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ..............................................................18

*Paige v. Coyner*, 614 F.3d 273 (6th Cir. 2010) .............................................. 22,23

*Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986).................................................42

*Penthouse v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) ..........................................30

*R.C. Maxwell v. Borough of New Hope*, 735 F.2d 85 (3d Cir. 1984).................30

*Reichle v. Howards*, 566 U.S. 658 (2011) ...........................................................39

*Ricci v. DeStefano*, 557 U.S. 557 (2009) .............................................................15

*Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503 (6th Cir. 2020)...................19

*Ryan v. Blackwell*, 979 F.3d 519 (6th Cir. 2020)..................................................24

*Samad v. Jenkins*, 845 F.2d 660 (6th Cir. 1988)............................................ 22,39

*Sensabaugh v. Halliburton*, 937 F.3d 621 (6th Cir. 2019) ......................... 3,17,38

*Shehee v. Grimes*, 39 Fed. Appx. 127 (6th Cir. 2002)................................ 3,17,38

*Smith v. Campbell*, 250 F.3d 1032 (6th Cir. 2001)...............................................18

*Somberg v. McDonald*, 117 F.4th 375 (6th Cir. 2024)........................................27

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ........................ 26,27

*Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975) .................................................34

*Stewart v. City of Euclid, Ohio*, 970 F.3d 667 (6th Cir. 2020)............................40

*Stoudemire v. Michigan Dep't of Corr*., 705 F.3d 560 (6th Cir. 2013)..............40

*Suarez Corp. Indus. v. McGraw*, 202 F. 3d 676 (4th Cir. 2000) ............... 2,28,30

*Tavener v. Elk Rapids Rural Agr. Sch. Dist*., 341 Mich. 244,
67 N.W.2d 136 (1954) ........................................................................................46

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ............................... 18,20,38

*Theyerl v. Manitowoc Cty*., 2015 WL 7779210 (E.D. Wis. Dec. 2, 2015) ........29

*Travis v. Redford Union Schs*., 2014 WL 2533165
(E.D. Mich. June 5, 2014).................................................................................43

*Turner v. City of Taylor*, 412 F.3d 629 (6th Cir. 2005)......................................45

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021)...............................................41

*Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392 (6th Cir. 2010)............. 38,45

*Viet v. Le*, 951 F.3d 818 (6th Cir. 2020) .............................................................15

*Walje v. City of Winchester, Ky.,* 773 F.2d 729 (6th Cir. 1985)........................42

*Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001) .................... 2,16,34

*West v. Atkins*, 487 U.S. 42 (1988) .....................................................................34

*White v. Taylor by & through City of Turner Police Dep't*,
No. 6:18-CV01909-, 2019 WL 2166532 (D. Or. May 17, 2019).......................32

*Wright v. Louisville Metro Gov't*, No. 3:21-CV-308-BJB,
2022 WL 178591 (W.D. Ky. Jan. 19, 2022).........................................................45

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580
(6th Cir. 2012).................................................................. 2,16,20,21,24,26,27,42

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) ................................................31

## Statutes

MCL 380.11a(5)........................................................................................................44

MCL 380.1201 .........................................................................................................47

MCL 722.623 and .633 ...................................................................................... 11,39

## Rules

Fed. R. App. P. 34(a)(1).........................................................................................11

Fed. R. Civ. P. 56(a)...............................................................................................14

## Books

Black's Law Dictionary (12th ed. 2024) ....................................................... 25,26

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendants-Appellees request oral argument on this matter pursuant to Fed. R. App. P. 34(a)(1). Oral argument will allow counsel for the parties to address any outstanding factual or legal issues which this Court deems relevant, and to specifically discuss the distinctions among applicable precedent as relevant on these facts.

## STATEMENT OF JURISDICTION

Defendants-Appellees do not contest jurisdiction.

## INTRODUCTION

Sandra Hernden, a police officer who neither lives in the district nor has children enrolled in the district, maintains this First Amendment retaliation lawsuit against Chippewa Valley School District and former Board of Education members Frank Bednard and Elizabeth Pyden. The District Court correctly dismissed Plaintiff-Appellant's suit, because she failed to plead any facts or allegations that could plausibly amount to state action, an adverse action, or a casual nexus between a constitutionally protected activity and a retaliatory action—all essential elements of a § 1983 First Amendment retaliation claim.

During the COVID pandemic, Plaintiff engaged in constant and aggressive conduct towards the Board and its individual members. Those two members, in an exercise of their own First Amendment rights, provided notice to other authority of her threatening conduct. These two alleged "retaliatory" actions did not amount to any adverse action resulting in a cognizable injury.

First, Pyden's email to Plaintiff's employer did not amount to a "credible threat" to Plaintiff's "economic livelihood." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 728 (6th Cir. 2010). Second, Bednard's email to the Department of Justice did not result in a criminal investigation by the state or "direct injury or immediate threat of harm" because of the investigation. *Haggart v. City of Detroit*, No. 2:19-cv-13394, 2021 WL 5040293, at *4 (E.D. Mich. Oct. 27, 2021); *Gordon*

1

*v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 780-81 (6th Cir. 1983). This is especially true where Plaintiff "was not deterred or chilled in the exercise of h[er] First Amendment rights." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012).

Where, as here, an official's speech is the alleged retaliation, that official's own First Amendment rights come into play. *See Bartley v. Taylor*, 25 F. Supp. 3d. 521, 531-2 (M.D. Pa. 2014) (*citing Suarez Corp. Indus. v. McGraw*, 202 F. 3d 676, 685-9 (4th Cir. 2000)). And courts "have held that there is no retaliation when the government's alleged retaliatory action was government speech." *Id*. at 532 (*quoting Balt. Sun. Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006)).

An official's "private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). Here, the unrefuted evidence shows that both Bednard and Pyden sent emails as *private* citizens. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: 25-4, Page ID # 391). Further, the alleged emails cannot qualify as "state action" as they do not fall within the "type of authority" vested in Board members. *Mackey v. Rising*, 106 F.4th 552, 558 (6th Cir. 2024).

Simply alleging Pyden and Bednard acted in retaliation for constitutionally protected conduct is conclusory and deficient to support the causal connection

element of Plaintiff's claim. *See Shehee v. Grimes*, 39 Fed. Appx. 127 (6th Cir. 2002). To show causation, Plaintiff "must demonstrate that the speech at issue represented a substantial or motivating factor in the adverse employment action." *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019). Where there is no adverse action, Plaintiff cannot maintain a First Amendment claim against two private individuals who were simply expressing their own First Amendment rights.

Should this Court somehow find that Appellant established a prima facie case of retaliation, it must consider that Appellant fails to point to any clearly established law that would overcome Pyden and Bednard's individual right to qualified immunity. Additionally, Appellant cannot maintain a viable *Monell* claim against the District. In short, the District Court was correct to dismiss Appellant's complaint, and its decision should be affirmed by this Court.

## ISSUES PRESENTED

1. Does Bednard's individually sent email to the DOJ, in response to the Attorney General's request to all citizens that they report efforts to intimidate public school staff, amount to an adverse action where Plaintiff only alleges a subjective fear of a hypothetical investigation?

   **NO.**

2. Does Pyden's individually sent email to Plaintiff's employer, Harper Woods Police, providing notice of Plaintiff's harassing behavior amount to an adverse action where Pyden specifically requested no adverse action be taken and Plaintiff experienced no credible threat to her employment?

   **NO.**

3. Are Bednard and Pyden entitled to qualified immunity where (1) there is no constitutional violation and (2) their conduct does not violate a "clearly established" constitutional right?

   **YES.**

4. Should the District be dismissed from the lawsuit under *Monell* where no constitutional violation occurred, the right at issue is not clearly established and where Plaintiff cannot cite to a custom or policy that authorizes the retaliation against community members for exercising protected speech?

   **YES.**

## STATEMENT OF FACTS

School boards are locally elected groups of citizens charged with crafting policy and approving budgets for districts of widely varying sizes and contexts. Most challenges that boards face are nonpartisan in nature: They relate to issues of policymaking, budgeting matters, the supervision of the district superintendent, and improving student achievement and well-being. Being a member of a board is a part-time position with few emoluments of office.

Defendants-Appellees Frank Bednard ("Bednard") and Elizabeth Pyden ("Pyden") both formerly served as Chippewa Valley Schools (the "District") Board of Education (the "Board") Members. Bednard, a retired law enforcement officer, served on the Board for 22 years. (Bednard Affidavit: RE 25-4, PageID # 389). Pyden, an attorney, served on the Board for 10 years. (Pyden Affidavit: RE 25-3, PageID # 384).

Both served on the Board during the COVID pandemic—a period of time when the public was quite critical of public servants, especially school board members. The Board had to make difficult decisions, adhere to mandates from state and federal powers that it was legally obligated to follow, and withstand public scrutiny. Indeed, during the COVID pandemic, "[l]ocal school officials across the United States [we]re being inundated with threats of violence and other hostile messages from anonymous harassers nationwide, fueled by anger over culture-war

issues. Reuters found 220 examples of such intimidation in a sampling of districts."[1]

Plaintiff-Appellant, Sandra Hernden, was a police officer at Harper Woods Police Department, and she had children in attendance at the District through school of choice. (Plaintiff Deposition: RE 25-2, PageID # 325). Plaintiff is a participant in Moms for Liberty. (*Id*. at PageID # 351-52). Moms for Liberty has been named an "extremist" organization by the Southern Poverty Law Center.[2] As explained by Plaintiff, Moms for Liberty wanted in person school during the COVID pandemic and argued that face masks were a violation of personal liberty. (*Id*.).  Since this lawsuit, Plaintiff accepted a new job working at the Warren Police Department, where she has a higher salary and works with her husband. (*Id*. at PageID # 327). Plaintiff no longer has children attending the District, nor does she live within the District's boundary. (*Id*. at PageID # 242-43).

Against this backdrop, Plaintiff admittedly had "heated" interactions with the Board regarding masking and its efforts to keep students safe. (Complaint: RE 1, PageID # 4). As an example, Plaintiff sent numerous emails, including as follows:

---

[1] https://www.reuters.com/investigates/special-report/usa-education-threats/

[2] *See* https://www.npr.org/2023/06/07/1180486760/splc-moms-for-liberty-extremist-group; *see also* https://thehill.com/opinion/education/4086179-six-reasons-why-moms-for-liberty-is-an-extremist-organization/ (explaining that "prominent members of Moms for Liberty have close ties to the Proud Boys, Three Percenters, QAnon and white Christian nationalists" and that a Moms for Liberty newsletter "recently carried a quote from Adolf Hitler: 'He alone, who OWNS the youth, gains the future'").

Once again, law on parents side. Maybe a lil more due care and caution at the next meeting Frank. You know, when you let your hatred you have for me take hold and you interrupt me.
1st 2 were free...

(Email: RE 1-3, PageID # 24). The above email indicates Plaintiff warned a Board Member to exercise "due care and caution" and then threatened that the "1st 2 [interruptions?] were free. . . ." (*Id.*). Plaintiff indicated this was a threat she would pursue legal action. (Plaintiff Deposition: RE 25-2, PageID # 368).

Bednard testified that, at a Board meeting on September 13, 2021, Plaintiff participated in public comment. (Bednard Affidavit: RE 25-4, PageID # 389). He immediately observed that Plaintiff's demeanor was much more serious than when normally addressing the Board. (*Id.*). She seemed "very angry and very agitated." (*Id.*). Plaintiff's public comment to the Board began with a history of the publication of Adolf Hitler's *Mein Kampf* and a description of how Nazi Germany labeled Jewish individuals with "yellow badges." (*Id.*). As these comments went on for some time and appeared to be irrelevant to District matters, Bednard attempted to direct the Plaintiff to explain how this commentary related to the District. (*Id.*). Plaintiff continued, telling a story about a family member. (*Id.*). When Bednard again attempted to direct Plaintiff to address District matters, she yelled several times in response that she was getting to her point. (*Id.* at PageID # 390). The Plaintiff proceeded to tell the Board that, by having students wear masks, <u>the Board was just</u>

7

like the Nazi's identifying Jewish individuals with yellow badges.[3] (*Id.*). As of September 13, 2021, the District did not have a mask mandate in place. (*Id.*). As a retired Macomb Sheriff Command Officer, Bednard testified that he has more than 30 years of experience and training in reading an individual's behavior. (*Id.*). During this public comment period, the **"Plaintiff's aggressive behavior shocked and scared [him]."** (*Id.*) (Emphasis added).

Likewise, Pyden had concerns that Plaintiff's actions, combined with her words, could constitute harassment or threatening behavior. (Pyden Affidavit: RE 25-3, PageID # 384-85). Some of the harassment and threats endured by Pyden included:

- Plaintiff "[e]ngaging in on-line forums providing [Pyden's] home address and telephone number. . . ." That "resulted in occupied cars parked in front of [her] home on at least two occasions. . . ."  (*Id.* at PageID # 384).

- Pyden received "unmarked mail, including Nazi cartoons, being sent to [her] home.  [She] also received telephone calls and messages from spammed numbers indicating that [she] should kill [her]self." (*Id.*).

- Plaintiff "[Sent] messages to the Board and community wherein she demanded 'action' be taken against [Pyden]." (*Id.*).

---

[3] Plaintiff also admitted to accusing the District of engaging in "Gestapo tactics" and turning the Board into a "dictatorship." (Plaintiff Deposition: RE 25-2, PageID # 354).

- Plaintiff posted personal and hateful messages online about Pyden, which included hateful messages about her age, appearance, and family. (*Id.*).

After Plaintiff's constant and aggressive conduct towards the District Board and its individual members, she alleges that two District Board Members sent emails that violated her First Amendment Rights.[4] (Complaint: RE 1, PageID # 6, 9).

The first email was allegedly sent by Pyden from her *private* email address to the Harper Woods Police Department—Plaintiff's former employer—which alerted it to Plaintiff's conduct. (Email: RE 1-2, PageID # 17). Pyden testified that Plaintiff frequently mentioned her position as a public safety officer during her public comments. (Pyden Affidavit: RE 25-3, PageID # 385). Pyden also <u>specifically indicated that she did not want Harper Woods to take any adverse employment action against Plaintiff</u> and just wanted to express her concern with how a public official was conducting herself. (Email: RE 1-2, PageID # 17).

Plaintiff did not suffer any monetary or emotional damage because of this email. (Plaintiff Deposition: RE 25-2, PageID # 363, 365). Plaintiff admitted that she was only aware of Pyden's email to Harper Woods because her supervisor called

---

[4] Plaintiff also inappropriately named the Chippewa Valley Schools Board of Education in this suit. The party is correctly designated on the above caption as the District itself. *See* (Opinion re MSD: RE 23, PageID # 207, fn 1) ("Because Hernden does not dispute the District's contention that the Board is not itself a proper party, the Court agrees that the proper entity to be subject to this suit is the District, not the Board").

her into an office, advised her that the email was received, reassured Plaintiff that there was no violation of departmental policy, and that no adverse employment action would be taken. (*Id*. at PageID # 331-32). In fact, Plaintiff soon after accepted a new job working at the Warren Police Department, where she has a higher salary, works with her husband, and is generally happier. (*Id*. at PageID # 327, 329, 340).

The second email was allegedly sent by Bednard to the Department of Justice ("DOJ"), which alerted the DOJ to Plaintiff and Moms for Liberty's threatening behavior. (Email: RE 1-3, PageID # 26). On October 4, 2021, the United States Attorney General issued a memorandum encouraging school boards to report behavior that could constitute harassment or threats. (Memo: RE 1-4, PageID # 28). That night, Bednard viewed an ABC News report on the memorandum which reported that anyone could refer abusive, intimidating, or threatening behaviors at Board meetings to the DOJ. (Bednard Affidavit: RE 25-4, PageID # 390; Plaintiff Deposition: RE 25-2, PageID # 361).

Plaintiff did not suffer any monetary or emotional damage because of this email. (Plaintiff Deposition: RE 25-2, PageID # 363, 365). Plaintiff was not even aware that Bednard sent a communication to the DOJ until a friend informed her; her friend discovered this through an independent FOIA request. (*Id*. at PageID # 349). Plaintiff admitted that the DOJ has not taken any action or contacted her in any manner. (*Id*. at PageID # 350).

10

Plaintiff alleges the emails Bednard and Pyden sent amount to adverse actions against her pursuant to the First Amendment. But Bednard and Pyden have First Amendment rights, too—they enjoy the right to engage in protected speech. As a society, we encourage school officials to report concerning behavior to law enforcement when appropriate. Certainly, the public policy is to not discourage reporting of concerns out of a fear of being sued. *See, e.g.,* MCL 722.623 and .633 (requiring certain school officials to make reports or face criminal liability). Plaintiff herself admitted that Pyden and Bednard have First Amendment Rights, and that people should report to the police if they believe a crime may have occurred. (Plaintiff Deposition: RE 25-2, PageID # 359, 361-63). Bednard and Pyden both decided that it was best to err on the side of caution, as hindsight can be unkind to school districts. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: RE 25-4, PageID # 391). Neither Bednard nor Pyden sent their communications "because of" any protected speech—as they both expect and encourage opposing views—rather, they did so because they were concerned that Plaintiff, and Moms for Liberty, may pose a threat to the District's safety. (*Id.* at PageID # 389) ("Coupled with Plaintiff's escalating aggressive behavior at Board meetings, I found this email to be threatening and intimidating and transmitted a copy of it with a complaint to the DOJ on October 5, 2021").

Moreover, Bednard and Pyden sent these emails **individually**. They did not

send these emails on behalf of the District, on behalf of the Board, or pursuant to any state-granted authority. Bednard and Pyden have both testified that they sent the above communications unilaterally. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: RE 25-4, PageID # 391). Plaintiff admitted that she has no knowledge of whether these emails were discussed or authorized by the Board. (Plaintiff Deposition: RE 25-2, PageID # 375). Other Board Members, former and current, have testified that the Board did not authorize—or were even aware of—the above emails. (Pearl Affidavit: RE 25-6, PageID # 410; Aquino Affidavit: RE 25-7 # 412; Sobah Affidavit: RE 25-8, PageID # 415; Wade Affidavit: RE 25-9, PageID # 418; Gura Affidavit: RE 25-10, PageID # 420; King Affidavit: RE 25-10, PageID # 422). Likewise, the emails were not discussed by the Board. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: RE 25-4, PageID # 391; Aquino Affidavit: RE 25-7 # 412; Sobah Affidavit: RE 25-8, PageID # 415). In fact, Board Members testified that they do not even recall seeing the emails. (*Id.*).

Plaintiff suggests Bednard, as the former Board President, could adopt Board Policy on his own. (Plaintiff Deposition: RE 25-2, PageID # 374). That is untrue and conflates the authority granted to Board Members. District Board Bylaw 0143 – *Authority* provides:

> Individual members of the Board do not possess the powers that reside in the Board of Education. The Board speaks through its minutes and not through its individual members. **An act of the Board shall not be valid unless approved at an official meeting by at least a majority**

**vote of the members elected to and serving on the Board**.

(Bylaw 0143: RE 28, PageID # 435) (emphasis added). Board Members testified that the District Board President has no authority to adopt policy outside a Board resolution and/or vote. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: RE 25-4, PageID # 391; Pearl Affidavit: RE 25-6, PageID # 410; Aquino Affidavit: RE 25-7 # 412; Sobah Affidavit: RE 25-8, PageID # 415; Wade Affidavit: RE 25-9, PageID # 418; Gura Affidavit: RE 25-10, PageID # 420; King Affidavit: RE 25-10, PageID # 422). Further: "While the Board President is the spokesperson for the Board, the Board President only has authority to convey official Board resolutions and/or positions." (*Id*.).

After the above emails were sent in December 2020 and October 2021, Plaintiff continued to appear at District Board Meetings and address the Board in an acerbic and uncivil manner. For example, she attended Board Meetings in February 2021, September 2021, October 2021, and April 2022. (Plaintiff Deposition: RE 25-2, PageID # 347; Board Minutes: RE 25-5, PageID # 394). Plaintiff has not alleged, and there are no facts to suggest, that her speech was actually chilled as a result of the above emails. She continued to appear at Board meetings with Moms for Liberty and continued to send emails to Board Members.

Plaintiff filed a First Amendment retaliation lawsuit against the District, Bednard, and Pyden on September 29, 2022. (Complaint: RE 1, PageID # 1). The

13

District filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(c) arguing that Plaintiff had not alleged that the District itself did anything. (MSD: RE 17, PageID # 121). The Court granted this Motion in part and denied it in part. (Opinion re MSD: RE 23, PageID # 206). The Court held that Pyden's email could not satisfy the requirements for liability under *Monell*. (*Id*. at PageID # 219). The Court, however, held that discovery was necessary as to whether the District itself was responsible for Bednard's communication. (*Id*.).

Plaintiff and Defendants filed opposing Motions for Summary Judgment. (Plaintiff MSJ: RE 24, PageID # 220; Defendants' MSJ: RE 25, PageID # 279). In lieu of oral argument, the Court decided the motions on the parties' briefing. (Opinion re MSJ: RE 37, PageID # 514). The Court granted Defendants' Motion in full and denied Plaintiff's Motion in full, finding that, as a matter of law, Plaintiff did not suffer an adverse action that would deter a person of ordinary firmness from engaging in protected speech. (*Id*.).

## STANDARD OF REVIEW

The grant of summary judgment by the district court is reviewed de novo. *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels summary judgment

14

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party has not made that sort of showing if "the record taken as a whole could not lead a rational trier of fact to find" in the party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted).

Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

## SUMMARY OF ARGUMENTS

The District Court correctly dismissed Plaintiff-Appellant's complaint, because she failed to plead any facts or allegations that could plausibly amount to state action, an adverse action, or a casual nexus between a constitutionally protected activity and a retaliatory action—all essential elements of a § 1983 First Amendment retaliation claim.

Appellant has failed to plead an adverse action resulting in a cognizable injury. Pyden's email does not amount to a "credible threat" to Plaintiff's "economic livelihood." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 728 (6th Cir. 2010). And Bednard's email did not result in a criminal investigation by the state or "direct injury or immediate threat of harm" because of the investigation. *Haggart v. City of Detroit*, No. 2:19-cv-13394, 2021 WL 5040293, at *4 (E.D. Mich. Oct. 27, 2021); *Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 780-81 (6th Cir. 1983). This is especially true where Plaintiff "was not deterred or chilled in the exercise of h[er] First Amendment rights." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012).

An official's "private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). Here, the unrefuted evidence shows that both Bednard and Pyden sent emails as *private* citizens. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: 25-4, Page ID # 391). Further, the alleged emails cannot qualify as "state action" as they do not fall within the "type of authority" vested in Board members. *Mackey v. Rising*, 106 F.4th 552, 558 (6th Cir. 2024).

Simply alleging Pyden and Bednard acted in retaliation for constitutionally protected conduct is conclusory and deficient to support the causal connection

16

element of Plaintiff's claim. *See Shehee v. Grimes*, 39 Fed. Appx. 127 (6th Cir. 2002). To show causation, Plaintiff "must demonstrate that the speech at issue represented a substantial or motivating factor in the adverse employment action." *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019). Where there is no adverse action, Plaintiff cannot maintain a First Amendment claim against two private individuals who were simply expressing their own First Amendment rights.

Should this Court somehow find that Appellant established a prima facie case of retaliation, it must consider that Appellant fails to point to any clearly established law that would overcome Pyden and Bednard's individual right to qualified immunity. Additionally, Appellant cannot maintain a viable *Monell* claim against the District. In short, the District Court was correct to dismiss Appellant's complaint, and its decision should be affirmed by this Court.

## LEGAL ARGUMENT

## I.   BEDNARD AND PYDEN ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity is an absolute defense to § 1983 claims. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). The doctrine is designed to protect "all but the plainly incompetent who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome a qualified-immunity defense, plaintiffs must show two things: (1) that government officials violated a constitutional right and (2) that the unconstitutionality of their conduct was clearly established when

they acted. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). A court may proceed with considering either prong of the qualified immunity inquiry first, and either prong can serve as a basis for dismissal. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**A. Plaintiff-Appellant Cannot Establish A First Amendment Violation.**

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (*quoting Hartman v. Moore*, 547 U.S. 250, 256 (2006)). A First Amendment retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct;

(2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; ***and***

(3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (*citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274, 287 (1977)). However, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state…a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Guiterrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

The District Court properly found that Plaintiff could not establish, as a matter of law, that there was any adverse action that would have "deterred a person of ordinary firmness from engaging in protected speech." (Opinion re MSJ: RE 37, PageID # 518) (internal citations omitted). This failure, alone, is dispositive. (*Id.*). Still, Plaintiff's retaliation claim does not present a cognizable injury for multiple independent reasons: (1) the emails do not amount to an adverse action, (2) the emails do not qualify as state action; and (3) even if there was an adverse action, it was not motivated by Plaintiff's protected conduct.

### i.   *No Adverse Action Bars Plaintiff's Claim.*

The Sixth Circuit "ha[s] described an adverse action as 'one that is *capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 514 (6th Cir. 2020) (*quoting Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)) (internal quotation marks and citation omitted) (emphasis in original). This test represents a compromise of competing concerns. On the one hand, it would "trivialize the First Amendment" if a citizen could sue over any governmental nuisance, no matter how inconsequential.

*Thaddeus-X*, 175 F.3d at 397 (citation omitted). On the other, nothing justifies "harassing people for exercising their constitutional rights," so the deterrent effect on speech "need not be great" to be actionable. *Id*. (citation omitted). This Court can calibrate the person-of-ordinary-firmness test to the Plaintiff, as the average public employee may "have to endure more than the average citizen." *Fritz*, 592 F.3d at 724.

However, "some adverse actions are so de minimis that they do not rise to the level of a constitutionally cognizable injury[.]" *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018). "[S]ince § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 397); *Wurzelbacher*, 675 F.3d at 584 (affirming dismissal on the pleadings where the alleged injuries "stem from the mere fact that fruitless database searches were conducted" and citing cases where allegations were "not sufficiently severe to constitute an adverse action").

The Sixth Circuit has established that a person of ordinary firmness may have suffered an adverse action if there is a "credible threat" to their "economic livelihood," *Fritz*, 592 F.3d at 728, or if they have to "endur[e] a criminal investigation" by the state and are subject to "direct injury or immediate threat of

harm" because of the investigation. *Haggart*, 2021 WL 5040293, at *4; *Gordon*, 706 F.2d at 780-81; (Opinion re MSJ: RE 37, PageID # 519).

> *1. Pyden's Email Was Not A Credible Threat To Plaintiff's Employment.*

This Court has recognized that mere complaints to a citizen's employer are insufficient to deter a person of ordinary firmness from engaging in First Amendment conduct. In the employment context, an "adverse action" usually means actions such as discharges, demotions, failure to hire, nonrenewal, and failure to promote. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 545 (6th Cir. 2012). A notice, by itself, to an employer that an individual is feeling harassed by a public safety employee causes no injury—and Plaintiff does not set forth any allegations about how this notice caused any actual injury. *See Bloch v. Ribar*, 156 F.3d 673, 680 (6th Cir. 1998) (noting this Court's prior decisions rejecting the notion that a retaliation action could be based on speculation of future misuse of information). While "actual deterrence on the part of the plaintiff is not necessary to state a claim of an adverse action," *Fritz*, 592 F.3d at 728, the fact that a plaintiff "was not deterred or chilled in the exercise of h[er] First Amendment rights" can bolster a conclusion that conduct does not amount to adverse action. *Wurzelbacher*, 675 F.3d at 585.

In *Fritz*, the plaintiff opposed the Township's actions. 592 F.3d at 725. After this opposition, the Township Supervisor made statements about the plaintiff to her employer and *encouraged her employer to terminate her employment*. This Court

held that a "person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract" because "few aspects of one's life are more important than gainful employment." *Id*. at 726–28. Importantly, *Fritz* does not stand for the proposition that defamatory statements alone are sufficient. Instead, the defamatory statements <u>and</u> the encouragement of termination were sufficient. *Id*. at 727 ("[T]hese potentially defamatory statements were not of such a character that they amounted to an adverse action taken on their own").

In *Samad v. Jenkins* this Court found that a letter threatening to reveal accurate collected information about a tenured professor was not an adverse employment action. 845 F.2d 660, 663 (6th Cir. 1988). In *Samad*, the plaintiff argued the letter "tended to compel" him to not exercise his rights to free speech. *Id*. Relying on *Gordon*, 706 F.2d 778, this Court concluded that "'the mere and proper use of information' is not itself actionable under the civil rights statutes," and that "such a mere 'subjective chilling' of first amendment rights by virtue of a **possible** misuse of the collected information did not create a federally justiciable controversy." *Samad*, 845 F.2d at 663 (emphasis added). This Court also noted that "[i]ronically, plaintiff is accusing defendants of chilling his first amendment freedoms by reserving their own first amendment right to speak out." *Id*.

Plaintiff contends the District Court misapplied the holding in *Paige v. Coyner*

22

in determining Pyden's email does not amount to an adverse action. 614 F.3d 273 (6th Cir. 2010). That argument is unavailing. The plaintiff in *Paige* criticized a proposed interstate project at a public hearing conducted by the port-authority executive director. The director took it upon herself to call Paige's employer, to whom she gave **false reports** on what Paige had said at the meeting, which allegedly resulted in Paige's **termination**. In that case, this Court concluded that Paige had alleged sufficient facts to withstand summary judgment. *Id*. at 282–83. Importantly, the plaintiff presented evidence that she was fired because the state official complained to her employer and sought to have her terminated. Here, Pyden's actions are far less nefarious and there is zero record evidence that Plaintiff's ability to make a living was hindered *at all* by Pyden's actions.

Moreover, Pyden's email was in fact protected First Amendment speech— public officials have the right to inquire into the motivations and goals of their colleagues or constituents. There was no threat or coercion. In fact, the opposite is true. Pyden **specifically said she did not expect any adverse action to be taken against Plaintiff in her email to the Harper Woods Police Department**. (Email: RE 1-2, PageID # 17). Furthermore, this email was sent on December 11, 2020, and Plaintiff learned of it shortly thereafter when she was advised by her employer that no adverse action—or action of any kind—would be taken. (Plaintiff Deposition: RE 25-2, PageID # 331-32); *see e.g. Lee v. Cleveland Clinic Foundation*, 676 Fed.

23

Appx. 488, 497 (6th Cir. 2017) (suspension without pay that is never served is not an adverse employment action). Plaintiff then proceeded to attend multiple school board meetings, which shows that her speech was not chilled in any manner. (Plaintiff Deposition: RE 25-2, PageID # 347; Board Minutes: RE 25-5, PageID # 394); *viz. Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020) (single statement to the press does not rise to the standard of an adverse action especially where plaintiff does not even allege that he was chilled from asserting his constitutional rights). Indeed, Plaintiff admitted she has suffered no damage—monetary or non-economic. (Plaintiff Deposition: RE 25-2, PageID # 363).

### 2. *Bednard's Email Did Not Give Rise To A Criminal Investigation.*

Bednard's email to the DOJ is likewise not an adverse action because Plaintiff at most suffered a "subjective chilling" of her First Amendment rights when she learned of the email. *Laird v. Tatum*, 408 U.S. 1 (1972). This is not a cognizable injury. This Court has been mindful to not trivialize the First Amendment when it is "unlikely that the exercise of First Amendment rights was actually deterred." *Mezibov*, 411 F.3d at 721; *Wurzelbacher*, 675 F.3d at 584. Indeed, it would trivialize First Amendment protections to conclude the mere possibility of being subject to a hypothetical or potential investigation amounts to an adverse action. A "subjective fear" of a hypothetical investigation is insufficient to rise to the level of a "specific"

and "objective harm." *Gordon*, 706 F.2d at 781 (examining *Laird*, 408 U.S. at 13-14).

In *Laird* the complaint alleged that United States Armed Forces intelligence agencies had engaged in the surveillance of lawful and peaceful civilian activity, collected information on political protests which served no legitimate military purpose, and disseminated this information to various military headquarters in the United States. 408 U.S. 1. These activities allegedly curtailed plaintiff's First Amendment rights. The Supreme Court rejected the claims that the intelligence activities had a "chilling effect" upon the exercise of First Amendment rights because plaintiffs were unable to point to any resulting direct injury or immediate threat of harm. The mere existence of a military data-gathering system does not constitute a justiciable controversy. "Allegations of subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" stemming from an "exercise of governmental power that [is] regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging."[5] *Id.* at 11, 13–14.

---

[5] Plaintiff relies on the use of prospective in *Laird* to argue the mere possibility of an investigation by DOJ amounts to an adverse action. (Appellant's Brief at 30). But the use of the word prospective implies more than subjective belief. Black's Law Dictionary defines prospective as "effective or operative in the future" and

This Court's decision in *Wurzelbacher v. Jones-Kelley* offers guidance where a plaintiff alleges no consequences such as Plaintiff. 675 F.3d 580. In *Wurzelbacher*, the plaintiff "was not threatened with a continuing governmental investigation, and "[did] not allege that defendants' actions in fact caused a 'chill' of his First Amendment rights." *Id*. at 584 (citing *Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir. 2002) ("Where, as here, a challenged action has no consequences whatsoever, either immediate or long-term, it ineluctably follows that such an action is 'inconsequential'")). Even where Wurzelbacher alleged mere knowledge of an improper database search by government officials caused him to suffer "emotional distress, harassment, personal humiliation, and embarrassment," the Court upheld the dismissal of plaintiff's First Amendment retaliation claim as he was not deterred or chilled in the exercise of his First Amendment rights. *Id*.

Plaintiff cites *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) for the proposition that a plaintiff facing a threat of potential punishment can be "chilled" in their speech. (Plaintiff's Brief at 33). *Schlissel* is distinguishable. *Schlissel* dealt only with the question of whether a plaintiff has suffered a sufficient injury to have standing to make a facial challenge to a policy; it contains no holding at all about—and does not even purport to address—what constitutes an adverse

---

"**anticipated or expected; likely to come about**." PROSPECTIVE, Black's Law Dictionary (12th ed. 2024) (emphasis added) (cf. retroactive).

action that could violate the First Amendment on the merits, and it specifically disclaimed applicability to as-applied claims. *See Id*. at 766; *cf. Morrison v. Bd. of Educ. of Boyd City*, 521 F.3d 602, 608 (6th Cir. 2008). Still, this Court was clear in *Schlissel* that a mere allegation of a subjective 'chill' or speculative fear is not "an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Schlissel*, 939 F.3d at 764.

Likewise, Plaintiff's reliance on *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019 (6th Cir. 2024) is misplaced. *Kareem* concerns a pre-enforcement challenge to an Ohio criminal law forbidding voters from posting pictures of their completed ballots online, which the plaintiff wanted to do. Plaintiff sued the Ohio Secretary of State, the county board of elections, and the county prosecutor. Kareem had standing to sue because each of the actors she sued, by Ohio law, enforced the ballot selfie laws. *Id*. at 1027. Thus, each defendant played a direct role in *enforcing* the election code. *Somberg v. McDonald*, 117 F.4th 375, 381 (6th Cir. 2024). Here, by contrast, the possible threat of an investigation of Plaintiff is not rooted in any law or statute and Bednard plays no part in determining if an investigation is indeed conducted.

The Plaintiff in the present matter experienced even less than the plaintiffs in *Laird* and *Wurzelbacher* as **no** investigation occurred here. *Laird,* 408 U.S. at 13-14 (holding the mere presence of an intelligence data-gathering activity in the

classroom does not create a justiciable controversy). Here, there is not a single allegation that the email to the DOJ in and of itself resulted in tangible consequences. The email did not disrupt Plaintiff's job, life, or ability to engage in First Amendment protected activity. Further proof that Plaintiff suffered no adverse impact because of this email is evidenced by the fact that Plaintiff was not even aware of the communication to the DOJ until a friend informed her and Plaintiff admitted the email had no impact. (Plaintiff Deposition: RE 25-2, PageID # 347, 349). She also continued to attend and speak at Board meetings after the discovery. (*Id.*; Board Minutes: RE 25-5, PageID # 394).

### 3. The Claim of Adverse Action is further Diminished When Such Result Would Impair the First Amendment Rights of Defendants.

Where, as here, an official's speech is the alleged retaliation, that official's own First Amendment rights come into play. *See Bartley v. Taylor*, 25 F. Supp. 3d. 521, 531-2 (M.D. Pa. 2014) (*citing Suarez Corp. Indus. v. McGraw*, 202 F. 3d 676, 685-9 (4th Cir. 2000)). And courts "have held that there is no retaliation when the government's alleged retaliatory action was government speech." *Id*. at 532 (*quoting Balt. Sun. Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006) (*citing Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997); *accord Kirby v. City of Elizabeth City*, 388 F.3d 440, 450 n. 8 (4th Cir. 2004)). Courts "cannot afford one party his right to free speech while discounting the rights of the other party." *Hutchins v. Clarke*, 661 F.3d 947,

956 (7th Cir. 2011). As the First Circuit explained: "Courts have not been receptive to retaliation claims arising out of government speech … This cautious approach to limiting government speech is warranted. Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern." *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013) (citations omitted); *see also IAMAW v. Haley*, 482 Fed. Appx. 759, 764 (4th Cir. 2012) ("a plaintiff relying only on speech to fulfill the second element has a heavy burden to overcome"); *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002) ("[T]he imposition of civil liability in this case would necessarily mean that the government is *punishing* [Defendant] for nothing more than voicing an opinion or recommendation") (emphasis in original); *Lynch v. Ackley*, 811 F.3d 569, 581 (2d Cir. 2016) ("The few arguably precedential rulings we have found have not tried to specify the limits of the First Amendment's protection of retaliatory speech by public officials, and neither do we"); *Theyerl v. Manitowoc Cty.*, 2015 WL 7779210, at *2 (E.D. Wis. Dec. 2, 2015) ("To find actual retaliation, there has to be something **much more than words**")(emphasis added).

Because of an official's own speech rights, mere criticism is not actionable. The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights

are implicated. Thus, where a public official's alleged retaliation is cited as speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory. The requirement that public official's speech include a threat, coercion, or intimidation, to adversely affect a citizen's First Amendment rights recognizes that a balance must be struck between the citizen's right to exercise her First Amendment rights ***and the public official's personal First Amendment rights, as well*** as his or her duty to the public to speak out about matters of public concern. *Suarez v. McGraw*, 202 F.3d 676, 688 (4th Cir. 2000).  The above is also true, even if the criticism or remark is made with malicious intent. *Baltimore Sun v. Ehrlich*, 437 F.3d 410, 420 (4th Cir. 2006) ("Of course, a public official's malicious intent, taken alone, cannot amount to a retaliatory response"). Many courts have reached the same conclusion. *See R.C. Maxwell v. Borough of New Hope*, 735 F.2d 85, 86-89 (3d Cir. 1984); *Penthouse v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991) ("[T]he Supreme Court has never found a government abridgement of First Amendment rights in the absence of some actual or threatened imposition of governmental power or sanction"); *Hammerhead Enterprises v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983) ("[S]tatements made by public officials will require courts to draw fine lines between permissible expressions of personal opinion and implied threats to employ coercive state power

to stifle protected speech"); *Colson v. Grohman*, 174 F.3d 498, 513 (5th Cir. 1999) ("retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983."); *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (in "speech against speech" cases, plaintiff must either demonstrate actual chilling of their speech or actual harm, such as the denial of a contract); *Lakkis v. Lahovski*, 994 F. Supp. 2d 624, 633 (M.D. Pa. 2014) (internal investigation is not sufficient adverse action); *see also Herman v. Hosterman*, No. 1:11-CV-898, 2011 WL 4974184, at *3 (M.D. Pa. Oct. 19, 2011) ("[D]e minimis responses to protected speech such as criticism, false accusations, or verbal reprimands do not rise to the level of actionable retaliation").

In *Harmon v. Beaumont Indep. Sch. Dist.*, No. 1-12-CV-571, 2014 WL 11498077, at *5 (E.D. Tex. Apr. 7, 2014), aff'd, 591 Fed. Appx. 292 (5th Cir. 2015), a public official called the plaintiff's employer to report concerns. The court held that a phone call to the Texas Workforce Commission was not actionable because the call "resulted in no adverse consequences for Plaintiff Harmon, and indeed, no consequence other than discussion with her supervisor. This would not chill a person of ordinary firmness." *White v. Taylor by & through City of Turner Police Dep't*, No. 6:18-CV01909-MC, 2019 WL 2166532, at *4–5 (D. Or. May 17, 2019), is also analogous to the present dispute. Plaintiff Christopher White was a deputy sheriff at the Marion County Sheriff's Office. He previously worked as a police officer for the

City of Turner Police Department in Oregon. Mr. White sued the City of Turner and two of its employees for allegedly filing a libelous complaint with the Marion County Sheriff in retaliation for critical statements Mr. White made about his former employer.  In dismissing the lawsuit, the federal court held that "a public official's defamatory statements made in retaliation for protected speech—including statements made directly to the speaker's employer—are generally not actionable under the First Amendment." *Id*. at *4. (*citing Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994)). This is true even if the defamation seriously harms the speaker's reputation or results in loss of her job. *Id*.  Although Mr. White argued that lodging a formal complaint with his employer constituted a standalone "state action" affecting his "relationship or status with the state," Defendant's complaint was "merely non-coercive speech which itself could not change Mr. White's relationship or status with the state; rather, it was directed toward and prompted *another* government actor to do so." *Id*. at *5 (emphasis in original).

In *Gini*, the Ninth Circuit held that a local police officer's defamatory statements made directly to the plaintiff's federal employer were not actionable under the First Amendment, even though the plaintiff lost her job. 40 F.3d at 1045. The same was true in *Mulligan v. Nichols*, where the plaintiff lost his job after city and police union officials leaked damaging information about him to members of the media. 835 F.3d 983, 988-91 (9th Cir. 2016). Instead, to support a retaliation

claim based on speech-versus-speech, a plaintiff must show that (1) the defendant "ma[d]e [a] decision or [took a] state action affecting [her] rights, benefits, relationship or status with the state;" (2) she was denied or lost "a valuable governmental benefit or privilege;" or (3) the defendant's speech included a "threat, coercion, or intimidation" suggesting that "punishment, sanction, or adverse regulatory action" would imminently follow. *Id.* at 989-90 (citations and quotation marks omitted). In *Moore v. Shelby Cnty., Kentucky*, a community member was vocal at open meetings. Afterwards, she alleged she was retaliated against by "(1) being required to make appointments to view records in violation of Kentucky's Open Records Act; (2) the deletion of the videos Ms. Moore requested pursuant to Kentucky's Open Records Act; and (3) being prohibited from volunteering in *Shelby County Animal Shelter*." 369 F. Supp. 3d 802, 807 (E.D. Ky 2019). The court held that these did not constitute an actionable "adverse action" for purposes of § 1983 and the First Amendment, even though there were tangible adverse impacts on her.

### ii.    *No State Action Bars Plaintiff's Claim.*

To state a successful § 1983 claim, Plaintiff must show she was deprived of a federal constitutional or legal right "*by a person acting under color of state law*." *Paige*, 614 F.3d at 278 (emphasis in original). In a § 1983 action for an alleged violation of "freedom of speech" under the First Amendment, both constitutionally and statutorily, Plaintiff must satisfy the element of "state action." *Mackey*, 106 F.4th

at 558 (holding "the First Amendment still does not reach a *private* party's efforts to stifle speech" or "a *private* defendant's actions" (emphasis in original)).

"[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law" and, while acting in his official capacity or exercising his responsibilities pursuant to state law, "abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 50 (1988); *accord Waters*, 242 F.3d at 359. Conversely, an official's "private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Waters*, 242 F.3d at 359.

Accordingly, the fact that a defendant is a governmental employee, or that the defendant is alleged to have utilized government-issued equipment, is not sufficient to create a question of fact concerning whether the defendant was acting under color of state law at the time the defendant engaged in the wrongful acts alleged because "not every action undertaken by a person who happens to be a state actor is attributable to the state." *Id.* Rather, "[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the [defendant] has acted under color of law." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) (internal quotation omitted). That is, "the controlling issue is whether [the defendant] possessed state authority and whether

34

[the defendant] purported to act under that authority." *Dean v. Byerley*, 354 F.3d 540, 553 (6th Cir. 2004).

In *Mackey*, plaintiff brought a § 1983 claim against City Commissioner, Jeff Rising, alleging that in response to his online political criticism, Rising called Mackey's mother, in his capacity as Commissioner, and threatened to "hurt" Mackey if he did not delete the post. 106 F.4th at 554-55. Mackey claimed that the call violated his rights under the First Amendment because Rising made the call in order to stifle Mackey's speech. *Id*. at 555. This Court employed the two-part test adopted in *Lindke* to distinguish Rising's official conduct from his private conduct. *Id*. at 558-59 (*citing Lindke v. Freed*, 601 U.S. 187 (2024)). In *Lindke*, the Supreme Court held that in order for a city manager to speak for the city, he must have (1) "possessed actual authority to speak on the State's behalf" and (2) "purported to exercise that authority when he spoke." *Mackey*, 106 F.4th at 559 (quoting *Lindke*, 601 U.S. at 191).

In assessing whether Rising possessed state authority, this Court identified the nature of the challenged act and compared it with his state-assigned responsibilities. *Id*. This Court found:

> To create state action, then, a State must do more than permit all parties (public and private alike) to engage in the conduct at issue… Even if a State permits a state official (like a 'private citizen') to engage in certain conduct, **the conduct will not qualify as state action if it falls outside the duties that the State has tasked the**

35

> **official to perform and if instead the State has permitted anyone to engage in the activity**.

*Id*. at 561 (emphasis added).[6] This Court determined that the alleged threat did not qualify as the "type of authority" vested in City Commissioners. *Id*. at 562. This Court explained that by serving in the City's legislative body, Rising "lack[ed] the power to wield the State's monopoly on the use of force," and that Mackey failed to point to a City-specific "statute, ordinance, regulation, custom, or usage" compelling a different result. *Id*. This Court emphasized that Rising was given the power to perform typical legislative tasks, **none of which he could perform alone**. *Id*. Rising could not even perform tasks alone in his official capacity as the Commission needed a quorum "for the transaction of business at all commission meetings." *Id*.

This Court declined to consider the second element of the state-action test "because [Mackey could not] get past its first element." *Id*. at 564. "Whether or not Rising purported to act in his official capacity, [the City] did not give him any authority to use (or threaten) physical force on its behalf. So the City cannot fairly be blamed for Rising's alleged threat to harm Mackey." *Id*. (internal quotations omitted). As such, this Court reached the conclusion that Rising's call was not state action. *Id*.

---

[6] The court adds a caveat that "If the State ***does assign*** an official a duty to engage in an action as part of the official's state job responsibilities, it is irrelevant that he might have taken the same action had he acted in a purely private capacity." *Id*. at 561 (emphasis added) (cleaned up).

36

*Mackey* confirms that Plaintiff's constitutional claim should be dismissed in the present action. Here, the unrefuted evidence shows that both Bednard and Pyden sent emails as *private* citizens. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: 25-4, Page ID # 391). Further, based on the ruling in *Mackey*, the alleged emails cannot qualify as "state action" as they do not fall within the "type of authority" vested in Board members. As members of the Board, Pyden and Bednard lacked the power to prosecute Plaintiff for harassment or impose adverse employment conditions. Specifically, in regards to Bednard's email, federal agencies asked **anyone** with relevant information to reach out, not just state officials. Conduct that the State permits anyone to engage in cannot qualify as state action. *Mackey*, 106 F.4th at 561. Furthermore, like the Defendant in *Mackey*, neither Pyden nor Bednard had the authority to adopt Board positions unilaterally or bind the District to their actions. The Board only speaks through its minutes and resolutions. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: RE 25-4, PageID # 391; Pearl Affidavit: RE 25-6, PageID # 410; Aquino Affidavit: RE 25-7 # 412; Sobah Affidavit: RE 25-8, PageID # 415; Wade Affidavit: RE 25-9, PageID # 418; Gura Affidavit: RE 25-10, PageID # 420; King Affidavit: RE 25-10, PageID # 422).

### iii.    *No Casual Connection Bars Plaintiff's Claim.*

A plaintiff must plead factual allegations that could plausibly support a finding that there is a causal connection between the constitutionally protected

conduct and the adverse action. *Thaddeus*-X, 175 F.3d at 394. Simply alleging that the defendants acted in retaliation for constitutionally protected conduct is conclusory and deficient. *See, e.g., Shehee*, 39 Fed. Appx. 127 (affirming dismissal of retaliation claim and stating that "conclusory allegations" and "bare allegations of malice on the defendants' part are not enough to establish retaliation claims"). In short, Plaintiff has failed to set out sufficient facts to raise her allegations of retaliation above the speculative level. *See Frazier v. USF Holland, Inc.*, 250 Fed. Appx. 142, 149 (6th Cir. 2007) (the employee presented nothing beyond self-serving speculation and thus failed to create an inference that his protected activity was the likely reason for the adverse action).

To show causation, Plaintiff "must demonstrate that the speech at issue represented a substantial or motivating factor in the adverse employment action." *Sensabaugh*, 937 F.3d at 629 (*quoting Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (concluding a letter of guidance was not an adverse action because it had no detrimental effect on plaintiff's job and did not impose any discipline or alter plaintiff's employment)). "A 'motivating factor' is essentially but-for cause[.]" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). "Temporal proximity alone is rarely, if ever, sufficient to establish causation" and there "must be other indicia of retaliatory conduct." *Sensabaugh*, 937 F.3d at 630.

In the present case, where there is no adverse action, there can be no causal

connection. Plaintiff never experienced any change in employment because of Pyden reporting her concerns and never experienced any kind of investigation because of Bednard reporting his concerns. Where Plaintiff, alone, argues temporal proximity, her argument is insufficient to withstand summary judgment. *Id*. In reality, Pyden and Bednard were concerned that Plaintiff's actions and words were escalating and could constitute legal harassment or threatening behavior. *See Samad*, 845 F.2d at 663 (noting: "[i]ronically, plaintiff is accusing defendants of chilling his first amendment freedoms by reserving their own first amendment right to speak out"). Indeed, many others spoke out at Board meetings but their words and actions did not invoke fear in Bednard and Hernden. As a society, we encourage school officials to report concerning behavior to law enforcement when appropriate. Certainly, the public policy is to not discourage reporting of concerns out of a fear of being sued. *See, e.g.,* MCL 722.623 and .633 (requiring certain school officials to make reports or face criminal liability).

## B. Plaintiff-Appellant Cannot Establish That The Individual Defendants Violated Her Clearly Established Rights.

Bednard and Pyden are entitled to qualified immunity if their conduct does not violate a "clearly established" constitutional right. *Pearson*, 555 U.S. at 231. A "clearly established" right is one that is "sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2011).

39

The "clearly established" analysis starts with examining existing precedent from the United States Supreme Court and Sixth Circuit for guiding authority on similar issues. *Stewart v. City of Euclid, Ohio*, 970 F.3d 667, 674-75 (6th Cir. 2020). The facts of the prior cases must be sufficiently similar to clearly establish the law. Recently, the Supreme Court once again reminded us "not to define clearly established law at a high level of generality." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 11 (2021). For example, merely recognizing that the Fourth Amendment bars the police from using excessive force is too general and will "not clearly establish that force was excessive on a particular occasion." *Beck v. Hamblen Cty. Tennessee*, 969 F.3d 592, 599 (6th Cir. 2020).

Rather, "the legal principal must clearly prohibit the official's conduct in the **particular circumstances** before him. The rule's contours must be so well defined that it is clear to a reasonable official that his conduct was unlawful **in the situation he confronted. This requires a high degree of specificity**." *Kollaritsch v. Michigan State Univ*., 944 F.3d 613, 626 (6th Cir. 2019) (emphasis added) (citing *Wesby*, 583 U.S. at 62). The Sixth Circuit also clarified that "the fact pattern of the prior case must be similar enough to have given fair and clear warning to officers about what the law requires." *Beck*, 969 F.3d at 599 (internal citations omitted); *see also Stoudemire v. Michigan Dep't of Corr*., 705 F.3d 560, 570 (6th Cir. 2013)

("qualified immunity must be assessed in the context of each individual's *specific* conduct.").

The high degree of similarity in fact patterns required is illustrated in *Tahlequah*, a case involving the shooting death of a suspect. 595 U.S. 9. In *Tahlequah*, the Court drew a distinction between the details of two arrests, calling them "dramatically different" for purposes of the qualified immunity analysis:

> The officers in *Allen* responded to a potential suicide call by sprinting toward a parked car, screaming at the suspect, and attempting to physically wrest a gun from his hands. Officers Girdner and Vick, by contrast, engaged in a conversation with Rollice, followed him into a garage at a distance of 6 to 10 feet, and did not yell until after he picked up a hammer. We cannot conclude that *Allen* "clearly established" that their conduct was reckless or that their ultimate use of force was unlawful.

*Id.* at 13 (citing *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997)). The above illustrates the high degree of specificity that is required to define clearly established law—i.e. the then-existing precedent must be so well defined that it is clear to any reasonable school district's employee that Defendants' conduct was unlawful in the situation they confronted.

Precedent makes it clear the mere prayer for nominal damages does not automatically guarantee a plaintiff's entry into court or the finding of an adverse action. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292-93 (2021). The plaintiff must still plead a cognizable cause of action and a completed violation of constitutional rights. *Id*. Plaintiff cites only cases where a First Amendment violation—and actual

41

injury—was indeed found to support her assertion that she need not prove any other injury. (Plaintiff's Brief at 13 (*citing Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986) (plaintiff inmates experienced significant injuries such as having their mail opened by guards and being forced to sit in their own feces); *Walje v. City of Winchester, Ky.*, 773 F.2d 729 (6th Cir. 1985) (plaintiff was suspended from job when wife was eight months pregnant and experienced significant stress)). This is insufficient.

Here, as discussed above, there is a vast body of federal law finding that there is no adverse action suffered by a person of ordinary firmness in the First Amendment context if there is no "credible threat" to their "economic livelihood," *Fritz*, 592 F.3d at 728, or if there is only a subjective belief of a possible investigation by the state. *Laird,* 408 U.S. 1; *Wurzelbacher*, 675 F.3d 580. As such, Bednard and Pyden should be summarily dismissed from this lawsuit.

## II.     THE DISTRICT CANNOT BE HELD LIABLE UNDER *MONELL*.

Prior to filing a Motion for Summary Judgment, Defendants filed a 12(b)(6) Motion in this case arguing that Plaintiff had not alleged facts that could satisfy the requirements of *Monell* and its progeny. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658 (1978); (MSD: RE 17, PageID # 121). The District Court granted this Motion in part and denied it in part holding:

> In sum, Hernden has failed to satisfactorily allege that liability extends
> to the District based on Pyden's email. She has not alleged (i) the

existence of a custom of tolerance of or acquiescence to "a clear and persistent pattern" of First Amendment violations, (ii) Board members' notice of such violations, (iii) Board members' tacit approval of such violations, or (iv) a causal connection between the supposed policy and Pyden's decision to send an email. See Claiborne, 103 F.3d at 508. The Court grants the District's motion to dismiss to the extent that Hernden's claims for municipal liability are based on Pyden's alleged unconstitutional act.

(Opinion re MSD: RE 23, PageID # 219). As to the Bednard email, the Court held:

The Court finds it plausible that—based on Bednard (i) telling the DOJ that its assistance would be appreciated by "our board," (ii) speaking in the first-person plural voice, (iii) signing the email as the Board's president, and (iv) sharing the email with the Board after he sent it— the email "reflects a collective decision of the Board." Compl. ¶ 60. These allegations suffice to maintain a claim against the District at the pleadings stage.

(*Id.* at PageID # 213).

The District Court did not address the merits of liability as applied to Bednard's email at the Motion for Summary Judgment stage as it found no constitutional violation and, therefore, did not need to continue its analysis. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation …"). Nevertheless, with the benefit of the record now before the Court, the District should be dismissed.[7]

---

[7] The Board of Education is not a proper party because the District and the Board of Education are not separate legal entities for purposes of filing suit. *See Travis v. Redford Union Schs.*, 2014 WL 2533165, *2 (E.D. Mich. June 5, 2014) (finding that a general powers school board lacks the capacity to be named as a defendant in a

As the unrefuted evidence shows, the Board did not discuss, encourage, or direct Bednard to send any correspondence to the DOJ. Likewise, Board Members have testified that they did not even recall seeing his email. Additionally, as already determined, there is no official policy or custom of the District violating First Amendment rights. (Opinion re MSD: RE 23, PageID # 219).

## A. If No Underlying Constitutional Violation, No *Monell* Liability.

"[When] no constitutional violation occurred, there can be no *Monell* claim against the [District], regardless of its policies." *Farinacci v. City of Garfield Hts.*, 2010 WL 1268068, at *5 (N.D. OH. 2010), aff'd, 461 Fed. Appx. 447 (6th Cir. 2012); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (A city "cannot be liable under § 1983 absent an underlying constitutional violation by its officers"). Since there is no First Amendment violation in this case, there is no *Monell* liability. That should end the inquiry into this *Monell* claim.

Additionally, *Monell* failure to train claims also fail as a matter of law when the right at issue is not clearly established. *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 994 (6th Cir. 2017) ("The absence of a clearly established right spells the end of this *Monell* claim"); *J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 721 (6th Cir. 2020) (same).

---

lawsuit); *see also* MCL 380.11a(5)*; Carlson v. North Dearborn Heights Bd. of Education*, 157 Mich. App. 653, 668 (Mich. Ct. App. 1987) ("[A] school board, as opposed to a school district, is not a corporate body which may sue or be sued").

B. **Plaintiff Cannot Meet The *Monell* Elements**.

Assuming Plaintiff could establish a constitutional violation—which she cannot—that alone is not enough to hold the District liable. *Graves v. Mahoning Cty.*, 821 F.3d 772, 776 (6th Cir. 2016); *see also Monell,* 436 U.S. at 658. Under § 1983, municipal liability attaches "only" if "a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (quotation omitted). The Sixth Circuit has instructed that the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy," not just an injury. *Vereecke,* 609 F.3d at 403 (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)).

Plaintiff has not identified a specific unconstitutional policy.[8] "Mere conclusory allegations are not enough. The pleadings must set forth the specific policy or custom allegedly adopted by the government." *Wright v. Louisville Metro Gov't*, No. 3:21-CV-308-BJB, 2022 WL 178591, at *1 (W.D. Ky. Jan. 19, 2022),

---

[8] To the contrary, the Board has adopted policies that expressly authorize persons to speak during public comment specifically providing: "[t]he Board of Education recognizes the value of public comment on educational issues and the importance of allowing members of the public to express themselves on District matters." Board Policy Bylaw 0167.3 – Public Participation at Board Meetings *available at* http://go.boarddocs.com/mi/chip/Board.nsf/goto?open&id=CJCDBD34EEF7.

*cert. denied*, No. 3:21-CV-308-BJB, 2022 WL 586777 (W.D. Ky. Feb. 25, 2022).

Similarly, Plaintiff's custom claim fails as well. A "custom" is the existence of a

"clear and persistent pattern" of a violation of similar constitutional rights. *Doe v.

Claiborne Cnty., Tenn.*, 103 F.3d 495, 505 (6th Cir. 1996). If Plaintiff can establish

a custom, she must also prove, "[m]ost importantly, the proper policymaking

officials acknowledge[d] and acquiesce[d] in the custom." *Braswell v. Corr. Corp.

of Am.*, 419 Fed. Appx. 622, 629-30 (6th Cir. 2011) (citing *Paige*, 614 F.3d at 284).

Thus, the Board itself—as the sole school policymaker under Michigan law—

must be on notice of deficiencies and omissions in their programming and allow it

to continue. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). But Plaintiff has not

established that the Board of Education acquiesced in unconstitutional conduct. To

the contrary, Plaintiff has relied solely on two emails sent by two individual Board

Members. However, no individual Board Member can bind the District or

promulgate Policy. It takes a quorum of the Board and a majority vote, which is then

memorialized in minutes or a resolution. The Michigan Supreme Court has made

this clear. *See Tavener v. Elk Rapids Rural Agr. Sch. Dist.*, 341 Mich. 244, 251, 67

N.W.2d 136, 139 (1954) (a school board "resolution speaks for itself. . . . Defendant

[school board] **speaks only through its minutes and resolutions**") (emphasis

added). The District adheres to this practice under Board Bylaw 0143 – *Authority*.

(Bylaw 0143: RE 28, PageID # 435) ("An act of the Board shall not be valid unless

approved at an official meeting by at least a majority vote of the members elected to and serving on the Board"); MCL 380.1201. Plaintiff even admits that "if the Board itself condemned Plaintiff's rhetoric or conduct in an official statement, it would have been engaged in protected government speech." (Plaintiff Response to MSJ: RE 29, PageID # 448).

The only issue presented at this stage is whether the Board itself sent or authorized Bednard's email. The undisputed record evidence reveals it did not. (Pyden Affidavit: RE 25-3, PageID # 386; Bednard Affidavit: RE 25-4, PageID # 391; Pearl Affidavit: RE 25-6, PageID # 410; Aquino Affidavit: RE 25-7 # 412; Sobah Affidavit: RE 25-8, PageID # 415; Wade Affidavit: RE 25-9, PageID # 418; Gura Affidavit: RE 25-10, PageID # 420; King Affidavit: RE 25-10, PageID # 422). As such, as there was no policy, there is no custom of constitutional violations, and as the uncontroverted testimony indicates that the Board did not authorize or approve these emails, Plaintiff has failed to satisfy any of the *Monell* requirements. As such, the District should be dismissed.

## CONCLUSION

For the above stated reasons, Defendants-Appellees request that this Court affirm the District Court's decision granting Defendants-Appellees' Motion for Summary Judgment and dismissing Plaintiff-Appellant's lawsuit with prejudice.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants-Appellees

DATED: March 10, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief contains 11,591 words of Times New Roman 14-point proportional type. The word processing software used to prepare this brief was Microsoft Office 365.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants-Appellees

DATED: March 10, 2025

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

TIMOTHY J. MULLINS states that on March 10, 2025, he did serve a copy of **Defendants-Appellees' Principal and Response Brief** via the United States Court of Appeals for the Sixth Circuit electronic transmission.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants-Appellees
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021

## RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 29, Defendants-Appellees designate the following filings in the United States District Court for the Eastern District of Michigan for inclusion in the Record on Appeal:

| Description of Record Entry | Filed Date | Record Entry No. | Page ID |
|---|---|---|---|
| Complaint | 09/29/2022 | 1 | 1-12 |
| Answer and Affirmative Defenses | 11/07/2022 | 8 | 44-58 |
| Supplemental Answer and Affirmative Defenses | 11/22/2022 | 11 | 65-85 |
| Defendants' MSD | 03/27/2023 | 17 | 121-139 |
| Opinion re MSD | 06/22/2023 | 23 | 206-219 |
| Plaintiff's MSJ | 10/18/2023 | 24 | 220-244 |
| Defendants' Response to Plaintiff's MSJ | 11/07/2023 | 28 | 428-435 |
| Defendants' MSJ | 10/25/2023 | 25 | 279-318 |
| Defendants' MSJ Ex. A, Plaintiff Deposition | 10/25/2023 | 25-2 | 320-382 |
| Defendants' MSJ Ex. B, Pyden Affidavit | 10/25/2023 | 25-3 | 383-387 |
| Defendants' MSJ Ex. C, Bednard Affidavit | 10/25/2023 | 25-4 | 388-392 |
| Defendants' MSJ Ex. C, Compilation of Board Minutes | 10/25/2023 | 25-5 | 393-408 |

| Defendants' MSJ Ex. E, Pearl Affidavit | 10/25/2023 | 25-6 | 409-410 |
|---|---|---|---|
| Defendants' MSJ Ex. F, Aquino Affidavit | 10/25/2023 | 25-7 | 411-413 |
| Defendants' MSJ Ex. G, Sobah Affidavit | 10/25/2023 | 25-8 | 414-416 |
| Defendants' MSJ Ex. H, Wade Affidavit | 10/25/2023 | 25-9 | 417-418 |
| Defendants' MSJ Ex. I, Gura Affidavit | 10/25/2023 | 25-10 | 419-420 |
| Defendants' MSJ Ex. J, King Affidavit | 10/25/2023 | 25-11 | 421-423 |
| Plaintiff's Response to Defendants' MSJ | 11/14/2023 | 29 | 436-458 |
| Reply in Support of Defendants' MSJ | 11/27/2023 | 30 | 467-473 |
| Notice of Supplemental Authority in Support of Defendants' MSJ | 07/31/2024 | 35 | 489-511 |
| Opinion and Order Granting Defendants' MSJ | 09/30/2024 | 37 | 514-524 |
| Judgment | 09/30/2024 | 38 | 525 |
| Plaintiffs' Notice of Appeal | 10/03/2024 | 39 | 526 |